UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAZEEMA SATTAR,

    Plaintiff,

v.     Case No:   2:15-cv-25-FtM-29MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause is before the Court on Plaintiff Nazeema Sattar's Complaint (Doc. 1) filed on January 15, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability, disability insurance benefits, and Supplemental Security Income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.[1]  Plaintiff filed a Reply to Defendant's Brief (Doc. 20).  For the reasons set out herein, the Court respectfully recommends that the Commissioner's decision be **affirmed in part and reversed and remanded in part** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

    1  Plaintiff entitled her Memorandum of Law, "Motion for Summary Judgment With Supporting Memorandum of Law" (Doc. 17) but did not file it as a motion.  The Court will construe Plaintiff's filing as a Memorandum of Law.

I.      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

A.      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

B.      **Procedural History**

On July 2, 2010, Plaintiff filed an application for disability insurance benefits, asserting an onset date of June 1, 2001. (Tr. at 97, 143). On July 8, 2010, Plaintiff filed an application for Supplemental Security Income alleging the same onset date. (*Id*. at 98, 150). Plaintiff's applications were denied initially on November 2, 2010, and on reconsideration on March 18, 2011. (*Id*. at 97-100). A hearing was held before Administrative Law Judge Larry Butler on August 30, 2012. (*Id*. at 59-96). The ALJ issued an unfavorable decision on April 25, 2013. (*Id*. at 31-39). On December 5, 2014, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-4). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on January 15, 2015. This case is ripe for review.

C.      **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013); *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2004. (Tr. at 33). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2001, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff has the following medically determinable impairments: lumbar and cervical spine disorder, citing 20 C.F.R. § 404.1520(c) and 416.920(c). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(c), 416.925 and 416.926). (*Id.* at 35). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R., §§ 404.1567(b) and 416.967(b). (*Id.* at 36). The ALJ found that Plaintiff had no past relevant work. (*Id.* at 37). The ALJ found that Plaintiff was considered a younger

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

individual on the alleged disability onset date.  (*Id*. at 38).   When considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id*.). The ALJ concluded that Plaintiff was not under a disability from the alleged onset date of June 12, 2001 through the date of the decision.  (*Id*.).

> D. **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises two issues.   As stated by Plaintiff, they are:

1) The ALJ's assessment that Plaintiff has the residual functional capacity to perform a full range of light work is not based on substantial evidence.

2) The ALJ's decision is not based upon substantial evidence because the ALJ erred in finding Plaintiff's adjustment disorder with mixed anxiety and depressed mood is non-severe.

### A. Whether the ALJ's finding that Plaintiff was capable of performing a full range of light work was supported by substantial evidence

Plaintiff asserts the medical records support a more limited RFC than set forth by the ALJ.   The Commissioner responds that the ALJ's RFC findings are supported by substantial evidence.

#### 1. MRI imaging

Plaintiff claims that imaging studies performed on Plaintiff's cervical and lumbar spine show nerve root abutment and compromise.   Plaintiff references three MRI imaging reports in the record.   The first MRI was conducted on August 15, 2001.   (Tr. at 274).   The report indicated that the disc spaces appeared normal.   (*Id*.).   There was a loss of signal intensity at the L4-5 and L5-S1 levels.   (*Id*.).   The report indicated that there is a moderate central disc protrusion that appeared to abut the S1 nerve roots bilaterally.   (*Id*.).   The report showed minimal canal stenosis, no foraminal encroachment, and a moderate degree of posterior disc bulging at L4-5 posteriorly without canal or foramen encroachment.   (*Id*.).   The report showed all other levels appeared unremarkable.   (*Id*.).

The second MRI was conducted on October 21, 2008.   (*Id*. at 279-80).   The impression of the cervical spine was that no abnormal signal was seen in the vertebral bodies.   (*Id*.).   The discs appeared normal.   (*Id*.).   There was a slight left lateral bulge at C7-T1, which could have

been compromising the left nerve root.  (*Id*.).  The imaging of the thoracic spine indicated no abnormal MRI signal was seen from the discs or from the vertebral bodies.  (*Id*.).  The MRI of the thoracic spine was normal with no evidence of herniated or bulging discs causing any pressure on the thecal sac or nerve roots.  (*Id*.).  The imaging of the lumbar spine indicated the L4-5 and L5-S1 discs were abnormal and were flattened.  (*Id*.).  These discs had lost their hydration.  (*Id*.).  The imaging showed a marked narrowing of the L5-S1 disc space with abnormal MRI signal at the vertebral endplates.  (*Id*.).  The L5-S1 disc showed a central and left lateral bulge.  (*Id*.).  The impression was bulging disc at L5-S1 centrally and on the left side indenting the thecal sac and possibly the left nerve root.  (*Id*.).

The third MRI was conducted on August 25, 2010.  (*Id*. at 372).  The imaging showed a lateral bulge at C7-T1 indenting the right nerve root.  (*Id*.).  The findings were "very subtle." (*Id*.).  A left-sided bulge was seen at C6-C7 impinging on the left nerve root, with mild pressure on the left nerve root at C7-T1 also.  (*Id*.).  The impression was bulging disc at C7-T1 pressing on the right nerve root and to a lesser extent the left nerve root.  (*Id*.).  At C6-C7 there was a bulging disc on the left side with mild pressure on the left nerve root.  (*Id*.).  The remainder of the imaging was unremarkable.  (*Id*.).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work.  *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and, along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work.  *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  The RFC is the most a plaintiff is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).

In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

The ALJ noted the MRI results from August 2001, mentioning that this imaging revealed that Plaintiff had changes at L4-5 and L5-S1 with central disc protrusion. (Tr. at 33). The ALJ noted that Plaintiff took Ultram for the pain. (*Id.*). The ALJ noted that Plaintiff has sporadic medical records, but did mention the MRI in October 2008 which showed a herniated disc at C7-T1 and a bulging disc at L5-S1 central and on the left side indenting the thecal sac and possibly the left nerve root. (*Id.* at 34). The ALJ also reviewed the MRI in August 2010 showing degenerative changes most pronounced at L5-S1. (*Id.*). In the decision, the ALJ considered the MRI imaging mentioned by Plaintiff. (*Id.*). The ALJ cited to medical records prepared after the procedure in November 2010 that Plaintiff was doing "remarkably well." (*Id.*). The ALJ noted that Plaintiff's muscle relaxers were working well. (*Id.*). Plaintiff attended physical therapy sessions, was making good progress, and was consistently improving with decreased pain. (*Id.*). The ALJ did consider the MRI imaging records, but determined that Plaintiff had improved after her procedure was done.

Notwithstanding the MRIs, "[t]he severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality." *Brown v. Astrue*, No. 3:08-CV-1066-J-TEM, 2010 WL 1257479, at *5 (M.D. Fla. Mar. 29, 2010). Plaintiff failed to indicate how the MRI imaging impacted her ability to perform work at the light level. Based on the ALJ's review of the MRI imaging records and Plaintiff's failure to indicate how these records impacted

Plaintiff's ability to perform the full range of light work, the Court determines that the ALJ did not err in his consideration of Plaintiff's MRI imaging as it relates to Plaintiff's RFC.

### 2. Physicians

Plaintiff argues that Mohammed Y. Memon, M.D. found Plaintiff to continue to have pain and limitations after surgery; and Daniel J. Johnson, M.D. and Efren Baltazar, M.D. found Plaintiff to have limitations not mentioned by the ALJ in his RFC determination. The Commissioner responds that Plaintiff relied on medical evidence not submitted to the ALJ, and that the ALJ's RFC finding was supported by substantial evidence.

### a. Dr. Memon

Plaintiff argues that the RFC did not reflect the limitations found by Dr. Memon. Plaintiff contends that according to Dr. Memon, despite her surgeries, she continues to have neck pain, numbness, low back pain, and carpal tunnel syndrome. The Commissioner responds that the ALJ considered Dr. Memon's records that were produced to the ALJ, and substantial evidence supports the ALJ's RFC determination.

In the decision, the ALJ noted that Plaintiff reported pain in her back and legs. (Tr. 34). The ALJ noted the MRIs as discussed above, and noted that surgery was recommended in November 2009. (*Id.*). The ALJ discussed the results of the posterior cervical laminectomy and foraminotomy performed in August 2010, noting that Plaintiff reported a significant decrease in pain in November 2010, and that the doctor's notes reflected that she was "doing remarkably well." (*Id.*). The ALJ also noted that muscle relaxants worked well, and that Plaintiff was making good progress in her physical therapy sessions. (*Id.*). The ALJ discussed Plaintiff's carpal tunnel syndrome finding that she underwent a carpal tunnel release in October 2011 with follow-up doctor notes reporting good results with a resolution of the arm pain. (*Id.*).

On August 25, 2010, Dr. Memon performed a posterior cervical laminotomy and foraminotomy at level C6-C7 bilaterally, and at level C7-T1 on the right side, as well as a foraminotomy at level C5- C6 on the right side.   (Tr. at 448).   On September 9, 2010, Plaintiff complained of muscle spasms and pain.   (*Id*. at 440).   However, on September 21, 2010, Plaintiff saw Dr. Memon and stated that her pain had decreased immensely.   (*Id*. at 439).   On October 26, 2010, Plaintiff complained of pain in both shoulder blades and numbness of fingertips.   (*Id*. at 438).   However on November16, 2010, Dr. Memon noted that Plaintiff was "doing remarkably well and the wound looks clean and healing.   She thinks the muscle relaxant is doing a lot of good for her." (*Id*. at 437).   Dr. Memon advised Plaintiff to continue using the muscle relaxant and noted she was receiving in-home physical therapy.   (*Id*.).   A physical therapy report dated December15, 2010 indicated that Plaintiff was improving in all aspects; with a decrease in frequency and intensity of pain; with an increase in muscle strength and range of motion; with decreasing edema of cervical paraspinal area; and with deceasing paresthesia of the right upper extremity.   (*Id*. at 575).

The ALJ considered the reports of Dr. Memon that were before him as well as the reports from the physical therapist.   The ALJ reviewed and cited to Dr. Memon's reports, the MRIs he considered, and the physical therapy reports.   Plaintiff argues that even though she had surgery on her back and for her carpal tunnel syndrome, Dr. Memon found that Plaintiff was still experiencing pain, numbness, low back pain, and carpal tunnel syndrome.   (Doc. 17 at 11).   In support of this contention, Plaintiff cites to a letter dated March 26, 2013 by Dr. Memon.   (Tr. at 643).

In the March 26, 2013 letter, Dr. Memon stated that Plaintiff continues to have multiple problems, which include neck pain radiating to both upper extremities, numbness, carpal tunnel

syndrome, and low back pain. (*Id*.). Dr. Memon thought that Plaintiff may require additional surgery in her back. (*Id*.). Dr. Memon noted that Plaintiff claims she cannot sit and walk, has weakness in her hands from the cervical and carpal tunnel problems. (*Id*.). Dr. Memon found that Plaintiff was disabled due to her multiple problems. (*Id*.).

The Commissioner argues that this letter was first presented to the Appeals Council and was not before the ALJ. Therefore the ALJ could not err in failing to consider a letter that was never presented to him to review. Further, the Commissioner asserts that Plaintiff failed to raise any issue regarding whether the Appeals Council erred in denying review based upon the submission of this letter. The Commissioner concludes (1) that the ALJ did not err because this letter was not presented to him prior to his decision, and (2) that Plaintiff fails to raise an issue as to the Appeals Council's decision and, therefore, it is waived.

Dr. Memon's letter was dated March 26, 2013. The ALJ rendered his decision on April 25, 2013. The record indicated that Plaintiff submitted Dr. Memon's letter to the Appeals Council on June 10, 2013, but did not submit it to the ALJ. (Tr. at 642, letter from Plaintiff's counsel to the Appeals Council enclosing the March 26, 2013 letter). The Appeals Council mentioned in its Order that it considered Exhibit 28F, which was the letter from Dr. Memon dated March 26, 2013. (*Id*. at 6). Plaintiff failed to raise the issue that the Appeals Council erred in denying review based upon the new evidence of the March 26, 2013 letter by Dr. Memon.

When a plaintiff does not appeal the Appeals Council's decision to deny review, then a court need not consider new evidence that was provided only to the Appeals Council to determine if the ALJ's decision was supported by the record. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). A court must look "at only the evidence that was before the ALJ." *Id*.

If the plaintiff had challenged both the ALJ's decision and the decision of the Appeals Council to deny review based on the new evidence submitted to it, then the Court would consider whether the new evidence "renders the denial of benefits erroneous." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir. 2011).   In this case, the Court finds that the ALJ considered Dr. Memon's records that were presented to him, and did not err in failing to review or discuss the letter dated March 26, 2013, because that letter was submitted to the Appeals Council and not to the ALJ.   The ALJ could not consider evidence that was not before him.   Based upon the letter being first submitted to the Appeals Council, and there being no challenge to the Appeals Council's decision, the Court will not consider the letter dated March 23, 2013.   The Court finds that the ALJ did not err in his consideration of Dr. Memon's records.

      **b.   Dr. Johnson**

Plaintiff argues that consultative examiner Dr. Johnson found abnormal findings during his March 5, 2011 examination of Plaintiff.   Plaintiff argues Dr. Johnson found Plaintiff to have a limited range of motion in both of her shoulders and her cervical spine, as well as diminished sensation over the ulnar distribution of her right hand.   Plaintiff claims that Dr. Johnson found Plaintiff to be suffering from diminished sensation of the right arm due to radicular symptoms caused by degenerative disc disease of the cervical and lumbar spine.   The Commissioner argues that Dr. Johnson found no significant abnormalities, and the ALJ appropriately considered the generally normal findings of Dr. Johnson.

At step four, an ALJ is required to state with particularity the weight he gives to the medical opinions of record and the reasons why.   *Shaw v. Astrue*, 392 F. App'x 684, 686 (11th Cir. 2010) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); s*ee also McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006); *Rosario v. Comm'r of Soc. Sec.,* 877 F.

Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, the reviewing court is unable to determine whether the decision of the Commissioner was supported by substantial evidence. *Shaw*, 392 F. App'x at 686 (citations omitted); *Winschel*, 631 F3d at 1178-79 (without such a statement by the ALJ "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Dr. Johnson examined Plaintiff on March 5, 2011.  (Tr. at 471).  Dr. Johnson found Plaintiff had mild difficulty getting on and off the examination table, had mild difficulty with heel and toe walking, squatting, and hopping.  (*Id*. at 472).  Upon examination, Dr. Johnson found a lot of tenderness in the paravertebral muscles in the cervical and thoracic region.  (*Id*.).  He found the dorsolumbar spine had a normal range of motion, and both shoulders had a limited range of motion due to neck pain that seemed to radiate and worsen when Plaintiff lifted her arms.  (*Id*.).  Dr. Johnson found Plaintiff's elbows, wrists, hands, fingers, and lower extremity joints all with full range of motion.  (*Id*.).  Dr. Johnson concluded that Plaintiff had degenerative disc disease of the cervical and lumbar spine.  (*Id*. at 475).  Dr. Johnson found Plaintiff had radicular symptoms into the right upper extremity and diminished sensation in the right arm.  (*Id*.).  He found her grip strength to be fairly good, motor strength to be 5/5, upper and lower extremities with 5/5 grip strength bilaterally, straight leg raise was negative bilaterally, but had some fine motor difficulties with zipping and buttoning in the right arm and problems with dropping things regularly.  (*Id*.).  Dr. Johnson limited Plaintiff to standing for 10 to 15 minutes, walking 1 to 2 blocks, and occasionally lifting 5 pounds, but being able to sit without restriction.  (*Id*.).  Dr. Johnson noted that Plaintiff had a history of depression and that she is currently using Xanax, which seemed to control it.  (*Id*.).

The ALJ discussed and summarized Dr. Johnson's records.  (*Id*. at 34, 37).  The ALJ considered Dr. Johnson's opinion and gave it minimal weight.  (*Id*. at 37).  The ALJ found Dr. Johnson's opinion to be inconsistent with the "longitudinal record."  (*Id*.).  The ALJ found Dr. Johnson's assessment to be quite restrictive in terms of Plaintiff's exertional limitations.  (*Id*.).  The ALJ found few objective findings to support such limitation noting that plaintiff had full

grip strength, multiple areas of full range of motion, and negative straight leg raises. (*Id*.). Therefore, the ALJ gave minimal weight to Dr. Johnson's opinion. (*Id*.).

The ALJ considered Dr. Johnson's opinion. The ALJ found Dr. Johnson's opinion to be inconsistent with the record as a whole. The ALJ noted that Dr. Johnson limited or restricted Plaintiff, but did not support these severe restrictions with objective medical evidence and was in conflict with the "longitudinal record." (Tr. at 37). The ALJ reasoned that Plaintiff had full grip strength, multiple areas of full range of motion, and negative straight leg raises that do not support the severe restrictions imposed by Dr. Johnson. The ALJ stated with particularity the weight he gave to Dr. Johnson's opinion and why he afforded it minimal weight. However, the ALJ did not articulate which portions of the longitudinal record did not support Dr. Johnson's opinion as to Plaintiff's restrictions. The Court recommends remanding this action on another issue as stated below. Thus, the Court also recommends requiring the ALJ to reconsider Dr. Johnson's opinion in relation to the other medical evidence of record.

### c. Dr. Baltazar

Plaintiff argues that State Agency Medical Consultant, Dr. Baltazar, found in the Physical Residual Functional Capacity Questionnaire completed on March 17, 2011, that Plaintiff had limitations that were not included in Plaintiff's RFC by the ALJ. The Commissioner argues that the limitations found by Dr. Baltazar do not undermine the ALJ's RFC finding that Plaintiff was able to perform a significant number of jobs in the national economy, nor does it erode the occupational base for jobs at the light exertional level.

Dr. Baltazar was a non-treating, non-examining physician who completed a Physical Residual Functional Capacity Assessment on March 17, 2011, by reviewing the medical records to date. Dr. Baltazar found that Plaintiff was able to: lift 20 pounds occasionally; lift 10

pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and/or pull unlimited; climb ladder/rope/scaffolds frequently; stoop, crouch, and crawl frequently.  (Tr. at 478-79).  Plaintiff was limited to frequently reaching in all directions and fingering bilaterally; and feeling frequently with the right hand.  (*Id.*).  Plaintiff had no visual limitations or communicative limitations.  (*Id.* at 480-81).  Plaintiff had one environmental limitation to avoid concentrated exposure to vibration.  (*Id.* at 481).

The ALJ did not include any of the limitations found by Dr. Baltazar in Plaintiff's RFC.  The ALJ found that plaintiff was able to perform a full range of light work.  (*Id.* at 36).  The ALJ must consider all of the relevant medical and other evidence.  *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 905 (11th Cir. 2013) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004)).  When assessing the RFC, an ALJ must state with particularity the weight given to different medical opinions and the reasons for affording them that particular weight.  *Id.* (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  If an ALJ fails to state this explanation, then the reviewing court "cannot determine whether the decision was support by substantial evidence."  *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).  An ALJ, however, is not required to account for every piece of evidence in the record.  *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

In the instant case, the ALJ stated generally that the State Agency physicians' reports were "the product of thorough review of the medical evidence of record and were consistent with the longitudinal medical records and has accordingly given the State Agency's findings great weight."  (Tr. at 37).  Yet, the ALJ failed to mention or cite to Dr. Baltazar's Physical Residual Functional Capacity Assessment, and failed to mention the limitations found by Dr. Baltazar.

The Commissioner asserts that even though the ALJ failed to include the limitations found by Dr. Baltazar in his Physical Residual Functional Capacity Assessment, these limitations are included in the definition of light work and therefore, any error is harmless.  The Court agrees that some of the limitations mentioned by Dr. Baltazar are included in the definition of light work.  Specifically, the ability to crawl is of little significance to the occupational base for light work as it is a rare activity.  SSR 85-15, at *7 (S.S.A. 1985).[3]  Also, within the definition for light work is the limitation of stooping and crouching occasionally, which is up to one-third of the time.  *Id*.  Further, the ability to feel the size, shape, temperature, or texture of an object is required in very few jobs.  *Id*.  Therefore, the limitations as to crawling, stooping, crouching and feeling with the right hand are included in the definition of light work, and even if the ALJ erred in failing to include these limitations, the error is harmless.

However, when a person has some limitations as to climbing, the effect on the occupational base may be difficult to determine and a vocational expert may be needed to determine the occupational base.  SSR 85-15, at *7 (S.S.A. 1985).  Dr. Baltazar found Plaintiff was limited in climbing ladders, ropes, and scaffolds.  (Tr. at 479).  In addition, Dr. Baltazar found Plaintiff was limited to reaching frequently in all directions with both hands.  (Tr. at 480).  Reaching and handling are abilities that are required in most jobs.  SSR 85-15, at *7 (S.S.A. 1985).  As a consequence, significant limitations in the ability to reach or handle may eliminate a large number of occupations.  SSR 85-15, at *7 (S.S.A. 1985).  Further, varying degrees of limitations in handling and reaching would have different effects on the occupational base.  *Id*.

---

[3] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  [citation omitted].  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).

The ALJ did not mention Dr. Baltazar's Report other than by generally giving great weight to the State Agency opinions.[4]  Without the ALJ discussing Dr. Baltazar's Report, stating the reasons why the ALJ chose not to include the limitations mentioned by Dr. Baltazar in the ALJ's RFC finding, and listing specific jobs that would not be impacted by Plaintiff's limitations, the Court cannot conduct a meaningful review of the ALJ's decision to determine whether the decision was supported by substantial evidence.  Therefore, the Court finds that the ALJ erred in failing to discuss the Physical Residual Functional Capacity Assessment completed by Dr. Baltazar, and in failing to determine whether the limitations found by Dr. Baltazar would erode the number of jobs that exist in the national economy that Plaintiff could perform.

> B.  **Whether the ALJ erred in failing to include Plaintiff's adjustment disorder with mixed anxiety and depressed mood to be non-severe**

Plaintiff contends that the ALJ erred in failing to find that Plaintiff's adjustment disorder with mixed anxiety and depressed mood to be not severe, arguing that this impairment limits Plaintiff's ability to perform basic work activity.  The Commissioner argues that the ALJ properly reviewed the medical evidence concerning Plaintiff's adjustment disorder with mixed anxiety and depressed mood and properly determined it was not a severe impairment.

---

[4] The Commissioner cited to *Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012), *Bouey v. Comm'r of Soc. Sec.*, 2007 WL 4482577 (M.D. Fla. Dec. 18, 2007) and *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013) for the proposition that an administrative law judge did not err in failing to include specific limitations found in the record in the RFC.  However, in these cases, the ALJ either listed specific jobs that Plaintiff was able to perform that did not include the limitation at issue, or the ALJ had considered the specific limitations raised, and found that these limitations did not impact the number of jobs in the national economy that the plaintiff could perform.  In the instant case, the ALJ never mentioned the limitations found by Dr. Baltazar, never mentioned Dr. Baltazar's report, and did not list specific jobs that Plaintiff was able to perform with these limitations.  The ALJ only found generally that there are jobs in the national economy that Plaintiff can perform.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

The ALJ found Plaintiff's medically determinable mental impairment of adjustment disorder with depression and anxiety did not cause more than minimal limitation of her ability to perform basic mental work activities, and concluded this impairment was not severe. (Tr. at 34). The ALJ did consider the four broad functional areas set forth in section 12.00C of the listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id*.). In the functional

areas of daily living, and social functioning, the ALJ found Plaintiff had mild limitations.  (*Id*. at 35).  The ALJ referred to Plaintiff's daily activities to determine Plaintiff's mild limitations as to these functional areas.  (*Id*.).  The ALJ did state as to the third area of concentration, persistence or pace that Plaintiff had mild limitations based on Plaintiff's daily activities and that this finding is consistent with the consultative examination.  (*Id*.).  The ALJ stated that he considered all symptoms, and considered the evidence of record.  (*Id*. at 36).  Even if the ALJ erred in failing to determine Plaintiff's alleged mental impairments as severe at step two, the ALJ did consider these impairments in combination with Plaintiff's other impairments whether severe or non-severe.  Therefore, the ALJ did not err in failing to find Plaintiff's adjustment disorder with mixed anxiety and depressed mood to be a severe impairment, or if he did err, it was harmless.

## CONCLUSION

Therefore, it is **RESPECTFULLY RECOMMENDED** that pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g), the Decision of the Commissioner be:

1) **Reversed and Remanded in part** for the Commissioner to reconsider Dr. Johnson's medical records, and Dr. Baltazar's medical records.

2) **Affirmed in part** as to the issues raised concerning MRI imaging, Dr. Memon's records, and the finding of severe impairments at step two.

Respectfully recommended in Chambers in Ft. Myers, Florida on December 30, 2015.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties